UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

**Devault Group Inc.**,

        Plaintiff,

v.

**City of Philadelphia**; **Pete Buttigieg**, in his official capacity as Secretary of Transportation,

        Defendants.

Case No. 2:21-cv-4295

# COMPLAINT

On September 29, 2020, after a lengthy application process, the Philadelphia International Airport certified Devault Group Inc. as a "disadvantaged business enterprise" (DBE) under 49 C.F.R. part 26. But on August 5, 2021, the airport reversed course and notified Devault that it was terminating its DBE certification because it alleged that Devault was controlled by William Hagstotz III, a white male. If Mr. Hagstotz had instead been a member of a racial minority group, the airport would have left Devault's DBE certification unaffected. Devault brings suit to enjoin the city's racially discriminatory action.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Devault Group Inc. ("Devault") is a Pennsylvania corporation with its principal place of business located at 16 Lempa Road, Holland, Pennsylvania 18966.

4. Defendant City of Philadelphia is a municipality existing under the laws of Pennsylvania. It may be served at 1400 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19107. The city is a certification agency under the Pennsylvania Unified Certification Program.

5. The City of Philadelphia owns the Philadelphia International Airport and is legally responsible for the Airport's discriminatory and unlawful actions. *See* http://www.phl.org/about/about-us/management-team (last visited on September 29, 2021).

6. Defendant Pete Buttigieg is Secretary of the United States Department of Transportation. He may be served at 1200 New Jersey Avenue SE, Washington, DC 20590.

## STATEMENT OF FACTS

### A. The "Disadvantaged Business Enterprise" Program

7. This case involves the Department of Transportation's "disadvantaged business enterprise" program (DBE).

8. The DBE program started in 1980 through a regulatory scheme issued under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et. seq. *See* https://www.transportation.gov/civil-rights/disadvantaged-business-enterprise (last visited on September 29, 2021).

9. Congress has reauthorized the program several times in various omnibus transportation bills. The most recent of these bills is the "Fixing America's Surface Transportation Act," also known as the "FAST-ACT," Pub. L. 114-94 (Dec. 4, 2015).

10. The federal statutes governing the "disadvantaged business enterprise" program require that "not less than 10 percent" of the funds made available to the DOT "shall be expended through small business concerns owned and controlled by socially and economically disadvantaged individuals," "[e]xcept to the extent that the Secretary determines otherwise." Pub. L. 114-94 § 1101(b)(3).

11. The phrase "small business concern" refers to a small business concern as defined in section 3 of the Small Business Act (15 U.S.C. § 632). *See* Pub. L. 114-94 § 1101(b)(2)(A).

12. The phrase "owned and controlled by socially and economically disadvantaged individuals" is defined in 15 U.S.C. § 637(d)(3), and it refers to a business:

> (i) which is at least 51 per centum owned by one or more socially and economically disadvantaged individuals; or, in the case of any publicly owned business, at least 51 per centum of the stock of which is owned by one or more socially and economically disadvantaged individuals; and
>
> (ii) whose management and daily business operations are controlled by one or more of such individuals.

15 U.S.C. § 637(d)(3); *see also* Pub. L. 114-94 § 1101(b)(2)(B).

13. Finally, the phrase "socially and economically disadvantaged individual" is defined by statute to include "women" as well as "Black Americans, Hispanic Americans, Native Americans, Asian Pacific Americans, and other minorities, or any other individual found to be disadvantaged by the Administration pursuant to section 8(a) of the Small Business Act." *See* Pub. L. 114-94 § 1101(b)(2)(B); 15 U.S.C. § 637(d)(3).

14. The Department of Transportation (DOT) has issued regulations for implementing the "disadvantaged business enterprise" program. Those rules can be found at 49 C.F.R. part 26.

15. These DBE regulations apply to every recipient of federal highway or transportation funds. *See* 49 C.F.R. § 26.3.

16. The DBE regulations require every recipient of DOT funding for transportation or highway projects to have a "disadvantaged business enterprise" program. *See* 49 C.F.R. § 26.21.

17. The Department's regulations describe the 10% statutory set-aside as an "aspirational goal at the national level, which the Department uses as a tool in evaluating and monitoring DBEs' opportunities to participate in DOT-assisted contracts." 49 C.F.R. § 26.41(b).

18. The Department's regulations define "socially and economically disadvantaged individual" as follows:

> *Socially and economically disadvantaged individual* means any individual who is a citizen (or lawfully admitted permanent resident) of the United States and who has been subjected to racial or ethnic prejudice or cultural bias within American society because of his or her identity as a members of groups and without regard to his or her individual qualities. The social disadvantage must stem from circumstances beyond the individual's control.
>
> (1) Any individual who a recipient finds to be a socially and economically disadvantaged individual on a case-by-case basis. An individual must demonstrate that he or she has held himself or herself out, as a member of a designated group if you require it.
>
> (2) Any individual in the following groups, members of which are rebuttably presumed to be socially and economically disadvantaged:
>
> > (i) "Black Americans," which includes persons having origins in any of the Black racial groups of Africa;[1]
> >
> > (ii) "Hispanic Americans," which includes persons of Mexican, Puerto Rican, Cuban, Dominican, Central or South American,

---

1. This presumably refers to those tracing ancestry to sub-Saharan Africa. The regulations to not presume individuals from North Africa to be socially or economically disadvantaged.

or other Spanish or Portuguese culture or origin, regardless of race;

(iii) "Native Americans," which includes persons who are enrolled members of a federally or State recognized Indian tribe, Alaska Natives, or Native Hawaiians;

(iv) "Asian-Pacific Americans," which includes persons whose origins are from Japan, China, Taiwan, Korea, Burma (Myanmar), Vietnam, Laos, Cambodia (Kampuchea), Thailand, Malaysia, Indonesia, the Philippines, Brunei, Samoa, Guam, the U.S. Trust Territories of the Pacific Islands (Republic of Palau), Republic of the Northern Marianas Islands, Samoa, Macao, Fiji, Tonga, Kirbati, Tuvalu, Nauru, Federated States of Micronesia, or Hong Kong;

(v) "Subcontinent Asian Americans," which includes persons whose origins are from India, Pakistan, Bangladesh, Bhutan, the Maldives Islands, Nepal or Sri Lanka;

(vi) Women;

(vii) Any additional groups whose members are designated as socially and economically disadvantaged by the SBA, at such time as the SBA designation becomes effective.

(3) Being born in a particular country does not, standing alone, mean that a person is necessarily a member of one of the groups listed in this definition.

49 C.F.R. § 26.5.

19. Every recipient of DOT funding from the Department must participate in a Unified Certification Program (UCP). *See* 49 C.F.R. § 26.81.

20. The purpose of the Unified Certification Program is to certify firms qualifying as "disadvantaged business enterprises" under federal regulations. *See* 49 C.F.R. § 26.81(b).

21. The Department's regulations require the Unified Certification Program to "make all certification decisions on behalf of the" recipient of DOT funding, and the

certification decision made by the Unified Certification Program "shall be binding on all DOT recipients within the state." 49 C.F.R. § 26.81(b); 49 C.F.R. § 26.81(b)(1).

22. The Philadelphia International Airport has been designated as a Unified Certification Program. *See* https://bit.ly/3AQPn9a (last visited on September 29, 2021).

23. The Department's regulations prohibit funding recipients and Unified Certification Programs from discriminating "on the basis of race, color, sex, or national origin." 49 C.F.R. § 26.7 ("You must never exclude any person from participation in, deny any person the benefits of, or otherwise discriminate against anyone in connection with the award and performance of any contract covered by this part on the basis of race, color, sex, or national origin.").

### B. Devault Group Inc.'s Participation In The DBE Program

24. Devault Group Inc. is a specialized trucking firm.

25. Devault operates ready-mix concrete barrel trucks, which it uses to procure and deliver ready-mix concrete to customers.

26. Many of Devault's customers are construction companies that work on projects funded by the Department of Transportation.

27. Devault is owned and controlled by Melissa Hagstotz.

28. Ms. Hagstotz is a woman, and is therefore presumed under federal law to qualify as "a socially and economically disadvantaged individual."

29. In 2018, Devault applied for "disadvantaged business enterprise" certification through the Philadelphia International Airport.

30. The airport conducted a robust investigation evaluation of Devault to determine whether it was eligible for DBE certification, and it reviewed Devault's financial records, leases agreements, books and records, and contracts.

31. The airport also interviewed Melissa and conducted an on-site inspection of Devault on June 23, 2020, visiting each of its three business locations: (a) 16 Lempa Road, Holland, Pennsylvania 18966; (b) 3025 Castor Avenue, Philadelphia, Pennsylvania 19134; and (c) 3301 61st Street, Philadelphia, Pennsylvania 19153.

32. On September 29, 2020, the airport certified Devault Group Inc. as a "disadvantaged business enterprise" and allowed it to participate in the DBE program under NAICS Code 236220—Construction Management, Commercial, and Institutional Building.

33. The airport, however, denied Devault's request to be certified as a "disadvantaged business enterprise" under NAICS Code 484220—Specialized Freight Trucking, Local.

34. Devault Group appealed the airport's denial of its certification under NAICS Code 484220.

35. On December 3, 2020, the UCP appeals committee heard and received evidence and testimony from Devault.

36. On December 7, 2020, the appeals committee overturned the airport's decision to deny Devault Group certification under the NAICS Code 484220.

    **C.**    **The City's Intended Revocation Of Devault's DBE Certification**

37. On August 5, 2021—just eight months after Devault was certified as a "disadvantaged business enterprise," the airport informed Devault that it intended to revoke its DBE certification. *See* Exhibit 1.

38. The airport's decision was based on an allegation of a "close relationship between Devault and Castor Materials, Inc.," a corporation owned and controlled Ms. Hagstotz's father, William Hagstotz III. *Id*. The airport alleged that "Devault functionally passes business through to Castor. Castor is DeVault's only supplier and

Devault is Castor's only delivery company." *Id*. It also alleged that "Devault and Castor are connected by a web of physical, financial, and operational ties—all of which are established by substantial evidence obtained via subpoenas, surveillance, and investigative interviews." For these and other reasons, the airport concluded that this relationship with Castor "prevents [Melissa] Hagstotz from controlling Devault." *Id*.

39.  Because Castor is owned and controlled by a white male (William Hagstotz III), the airport intends to revoke Devault's "disadvantaged business enterprise" certification because of Mr. Hagstotz's race. If Mr. Hagstotz had been a member of a racial minority group listed in 49 C.F.R. § 26.5, the airport would have left Devault's certification alone.

40.  Devault is suffering injury in fact from the threatened loss of its DBE status. This injury is fairly traceable to the city of Philadelphia, which owns Philadelphia International Airport, and the Department of Transportation, which is enforcing and administering a racially discriminatory DBE certification program. And this injury will be redressed by the relief that Devault is requesting from this Court.

### Claim 1: Violation Of 42 U.S.C. § 1981

41.  The Civil Rights Act of 1866 prohibits racial discrimination in the awarding of government contracts. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts"); 42 U.S.C. § 1981(b) ("[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.").

42.  The city of Philadelphia is violating 42 U.S.C. § 1981 by threatening to revoke Devault's DBE status because of Mr. Hagstotz's race.

43. Devault asserts this claim against the city of Philadelphia under 42 U.S.C. § 1983 and the implied right of action established by 42 U.S.C. § 1981.

44. The Secretary Buttigieg is violating 42 U.S.C. § 1981 by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts.

45. Devault brings this claim against Secretary Buttigieg under the implied right of action established by 42 U.S.C. § 1981, as well as *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and the Administrative Procedure Act.

### Claim 2: Violation Of Title VI

46. Title VI of the Civil Rights Act of 1964 prohibits racial discrimination in any "program or activity" that receives federal funds. *See* 42 U.S.C. § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

47. The city of Philadelphia is violating Title VI by threatening to revoke Devault's DBE status because of Mr. Hagstotz's race.

48. Devault asserts this claim against the city of Philadelphia under 42 U.S.C. § 1983 and the implied right of action established by Title VI.

49. The Secretary Buttigieg is violating Title VI by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts.

50. Devault brings this claim against Secretary Buttigieg under the implied right of action established by Title VI, as well as *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and the Administrative Procedure Act.

### Claim 3: Violation Of The Equal-Protection Clause

51. The Equal Protection Clause prohibits racial discrimination by state or local governments. *See Johnson v. California*, 543 U.S. 499, 510–11 (2005); *Shaw v. Hunt*,

517 U.S. 899 (1996) ("Racial classifications are antithetical to the Fourteenth Amendment, whose central purpose was to eliminate racial discrimination emanating from official sources in the States."); *Palmore v. Sidoti*, 466 U.S. 429, 432 (1984) ("A core purpose of the Fourteenth Amendment was to do away with all governmentally imposed discrimination based on race.").

52. The city of Philadelphia is violating the Equal Protection Clause by threatening to revoke Devault's DBE status because of Mr. Hagstotz's race.

53. Devault asserts this claim against the city of Philadelphia under 42 U.S.C. § 1983.

**Claim 4: Violation Of The Fifth Amendment's Due-Process Clause**

54. The Fifth Amendment's Due Process Clause prohibits the federal government from discriminating on account of race. *See Bolling v. Sharpe*, 347 U.S. 497, 500 (1954); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213–214 (1995).

55. The Secretary Buttigieg is violating the Fifth Amendment's Due Process clause by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts.

56. Devault brings this claim against Secretary Buttigieg under *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and the Administrative Procedure Act.

**DEMAND FOR RELIEF**

57. Devault Group Inc. respectfully requests that the court:

    a.    declare that the city of Philadelphia is violating 42 U.S.C. § 1981(a), Title VI, and the Equal Protection Clause by threatening to revoke Devault's DBE certification;

    b.    declare that the Secretary Buttigieg is violating 42 U.S.C. § 1981(a), Title VI, and the Equal Protection Clause by establishing, maintaining, and using racially discriminatory criteria to govern the awarding of government contracts;

  c. enter a preliminary and permanent injunction that prevents the city of Philadelphia and the Philadelphia International Airport from revoking or threatening to revoke Devault's DBE certification;

  d. permanently enjoin Secretary Buttigieg from establishing, using, or maintaining racially discriminatory criteria to govern the awarding of government contracts;

  e. order the city of Philadelphia to pay nominal and compensatory damages to Devault;

  f. award costs and attorneys' fees under 42 U.S.C. § 1988;

  g. award all other relief that the Court deems just, proper, or equitable.

                  Respectfully submitted.

                  /s/ Jonathan F. Mitchell

| | |
|---|---|
| WALTER S. ZIMOLONG | JONATHAN F. MITCHELL |
| Pennsylvania Bar No. 89151 | Pennsylvania Bar No. 91505 |
| Zimolong, LLC | Mitchell Law PLLC |
| Post Office Box 552 | 111 Congress Avenue, Suite 400 |
| Villanova, Pennsylvania 19085-0552 | Austin, Texas 78701 |
| (215) 665-0842 (phone) | (512) 686-3940 (phone) |
| wally@zimolonglaw.com | (512) 686-3941 (fax) |
| | jonathan@mitchell.law |
| Dated: September 30, 2021 | *Counsel for Plaintiffs* |